UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| v. : | |
| : | |
| JEFRY STEVENT PADILLA SANCHEZ : | Case No. 25-MJ-221 (ZMF) |
| : | |
| : | |
| **Defendant.** : | |

## GOVERNMENT'S MEMORANDUM IN SUPPORT OF PRE-TRIAL DETENTION

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in support of its oral motion that the Defendant, Jefry Stevent Padilla Sanchez ("Defendant" or "Padilla Sanchez"), be detained pending trial pursuant to 18 U.S.C. § 3142(e) and (f).

As discussed below, the Defendant is charged by criminal complaint with Unlawful Possession of a Firearm and Ammunition by a Felon, in violation of 18 U.S.C. § 922(g)(1). At the time of his arrest, Padilla Sanchez was subject to an active probation violation warrant in Maryland stemming from prior felony convictions, including burglary and unauthorized removal of a motor vehicle. There is no condition or combination of conditions that will reasonably assure the safety of the community or the Defendant's return to court if released.

The government requests that the Court consider the following points and authorities, as well as any other facts, arguments, and authorities presented at the detention hearing.

### I.   Procedural History

On September 17, 2025, a criminal complaint was signed by Magistrate Judge Faruqui, charging Padilla Sanchez with Felon in Possession of a Firearm or Ammunition, in violation of 18 U.S.C. § 922(g)(1), supported by an attached affidavit. The sworn affidavit establishes probable

cause that, on or about September 12, 2025, within the District of Columbia, the defendant, knowing he had been convicted of a crime punishable by more than one year, knowingly possessed a firearm and ammunition that had been shipped and transported in interstate and foreign commerce.

**BACKGROUND**

On September 12, 2025, at approximately 6:38 p.m., Metro Transit Police Department (MTPD) Sergeant O'Donnell observed Padilla Sanchez commit fare evasion at the Fort Totten Metro Station by "piggybacking" behind a paying customer.

When asked for his name and date of birth, Padilla Sanchez initially gave Sergeant O'Donnell a false date of birth. Later, Padilla Sanchez produced a Honduran passport with his correct date of birth and a warrant check revealed that Padilla Sanchez had an active extraditable warrant from Montgomery County, Maryland, for violation of probation on a February 14, 2024, second-degree burglary conviction. Officers placed him under arrest and searched him prior to transport to the jail. That search revealed a black 9mm Heckler & Koch P2000SK handgun, serial number 121-005815, concealed in his waistband, loaded with one round in the chamber and nine additional rounds in a ten-round magazine. Padilla Sanchez was also found to have thirty-seven (37) loose blue "M30" pills in his cargo pockets, later field-tested positive for fentanyl, plus an additional seven (7) "M30" fentanyl pills in a separate baggie.

The Defendant admitted to having ingested fentanyl earlier that day and requested hospital transport for withdrawal symptoms.

*See* Figure 1 below.

 

The pistol was test fired and found to be operable. There are no firearms or ammunition manufacturers in the District of Columbia and therefore the recovered firearm and ammunition travelled in and affected interstate commerce.

## II. Legal Authority and Argument

Under the Bail Reform Act, if the Court determines that "no condition or combination of conditions will reasonably assure the appearance of [a defendant] as required and the safety of any other person and the community," the Court shall order a defendant held pending trial. In determining whether any condition or combinations of conditions reasonably assure the appearance of the person as required and the safety of any other person and the community, the Court weighs four factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) his history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release. *See* 18 U.S.C. § 3142(g).

In making this determination, the "rules concerning the admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the [detention] hearing." 18 U.S.C. § 3142(f). Specifically, the presentation of hearsay evidence is permitted, and the government may proceed by proffer. *United States v. Smith*, 79 F.3d 1208, 1210 (D.C. Cir. 1996). Moreover, the government is not required to "spell out in precise detail how the government will prove its case at trial, nor specify exactly what sources it will use." *United States v. Martir*, 782 F.2d 1141, 1145 (2d Cir. 1986). *See also United States v. Williams*, 798 F. Supp. 34, 36 (D.D.C. 1992). A pretrial detention hearing should not be used as a discovery device and cross-examination should be limited to the disputed issues. *See Smith*, 79 F.3d at 1210, *see Williams*, 798 F. Supp. at 36. A judicial determination that a defendant should be detained pending trial on the ground of community safety must be supported by clear and convincing evidence. *United States v. Smith*, 79 F.3d 1208, 1209 (D.C. Cir. 1996).

The United States seeks detention pursuant to the provisions of the Bail Reform Act referenced *supra* and analyzed *infra*. In the Government's view, there are no conditions, or combination of conditions, that would ensure the safety of the community or the defendant's return to Court if released. Consequently, the defendant should be held pending trial.

### III. Factors Under § 3142(g)

#### A. Nature and Circumstances of the Offense Charged

Padilla Sanchez is charged with possessing a loaded firearm concealed in his waistband, with one round chambered and nine more in the magazine, making it immediately ready to fire. To add to the danger, this possession was in a busy Metro station during rush hours, while in

illegal possession of 44 fentanyl pills, and either still under the influence of the pills he ingested earlier in the day, or while experiencing withdrawal symptoms.

As a threshold matter, the defendant's possession of a loaded handgun placed the community at risk. *See e.g.*, *United States v. Gassaway*, No. 21-CR-550 (RCL), 2021 WL 4206616, at *3 (D.D.C. Sept. 16, 2021) (collecting cases in this district holding that unlawful firearm possession is dangerous to the public): *United States v. Howard*, No. 20-MJ-181 (BAH), 2020 WL 5642288, at *2-3 (D.D.C. Sept. 21, 2020) (making the same observation); *United States v. Cole*, 459 F. Supp. 3d 116, 120 (D.D.C. 2020) (noting that a firearm "has the great potential to escalate into violence"). Judges of this Court have warned against discounting the inherent danger associated with loaded firearms. *See, e.g.*, *Blackson*, 2023 WL 1778194, at *7-8 (noting that the absence of evidence of "use" "does little to detract from" the danger posed by a firearm "loaded with 19 rounds of ammunition in an extended magazine, . . . more ammunition than the gun was originally manufactured to carry, thereby increasing its potential to do greater harm" and placement "at the ready, on his person, and easily within reach"), aff'd, *United States v. Blackson*, No. 23-3020, 2023 WL 2663034 (D.C. Cir. Mar. 28, 2023); *see also United State v. Kent*, 496 F. Supp. 3d 500, 502 (D.D.C. 2020) (holding that a defendant should be detained pretrial in part because "the firearm recovered from the defendant's person had a round already chambered, making the circumstances even more troubling"), aff'd (D.D.C. Nov. 5, 2020). The firearm recovered had all these troubling characteristics, and more broadly, the firearm was loaded and ready to fire. Moreover, Padilla Sanchez was likely carrying the pistol to protect the somewhat valuable quantity of fentanyl he carried on his person.   Had someone attempted

5

to steal the drugs and Padilla Sanchez had chosen to protect them and himself with his firearm in a busy Metro station, the outcome could have been tragic.

The Defendant could not have possessed the firearm legally due to his status as a felon, and therefore had an illicit source for the firearm, further demonstrating the potential dangerousness.

B. **The Weight of the Evidence Against the Defendant**

The case against the Defendant is strong. As discussed *supra*, law enforcement officers personally observed the Defendant attempting to commit fare evasion by "piggybacking" behind another paying customer. During the process of issuing him a civil citation, he was found to have a warrant and was arrested. Upon searching him incident to arrest, officers recovered the pistol from his waistband, which was documented on body-worn camera footage. The Defendant further admitted to officers that he had ingested fentanyl earlier that day and requested hospital transport for withdrawal symptoms. When the pistol was found in his waistband during the pat down, he did not offer any denials or give any outward display of surprise.

As courts in this District have recognized, when the government's case is this strong, the weight-of-the-evidence factor should be given full consideration alongside the other § 3142(g) factors, because it directly informs both risk of flight and dangerousness. Notably, in *United States v. Blackson*, following a thorough review of the text of § 3142 and decisions analyzing this factor, Judge Howell found that "the weight of the evidence should not automatically be weighed less than the remaining statutory pretrial detention factors." 2023 WL 1778194, at *8. Instead, "the weight of the evidence against [a] defendant [should] be weighed as all factors are— in accordance

6

with the specific facts of this case—to determine whether pretrial detention is appropriate." *Id.* at *10. In an unpublished opinion, the D.C. Circuit affirmed Judge Howell's decision. *United States v. Blackson*, No. 23-3020, 2023 WL 2663034 (D.C. Cir. Mar. 28, 2023). The Second Circuit reached the same decision after a thorough and careful analysis of the issue. *United States v. Zhe Zhang*, 55 F.4th 141, 149-150 (2d Cir. 2022). This Court should follow *Blackson* and *Zhang;* this factor should be given no less weight than any other factor.

Indeed, "if the evidence against a defendant is overwhelming, credible, helpful, and important to the government's case in chief, that may increase the risk that defendant will flee to avoid future court proceedings and may indicate that the defendant is a present danger to himself or the community if the government's allegations later prove to be true." *Blackson*, 2023 WL 1778194, at *10. This is such a case, and the defendant should be detained pretrial.

### C. The Defendant's History and Characteristics of the Defendant

The Defendant's history and characteristics weigh heavily in favor of detention. His record reflects a persistent pattern of criminal conduct, and repeated violations of court-imposed supervision.

Padilla Sanchez's criminal record reflects a rapid progression from property crimes to drug-related conduct and now to armed narcotics possession. In July 2023, he was arrested for stealing a car and was convicted in the District Court of Maryland for Montgomery County of unauthorized removal of a motor vehicle in November 2023. He was sentenced to four years of incarceration, with all but three years, ten months, and three days suspended, and placed on three years of supervised probation. That conviction was part of a broader incident in which he also

7

faced controlled dangerous substance charges, which were ultimately dismissed as part of his plea agreement.

Only a few months later, in February 2024, Padilla Sanchez appeared in the Circuit Court for Montgomery County and pleaded guilty to second-degree burglary arising from an August 2023 arrest. The court imposed a three-year sentence, suspending all but 195 days, and ordered two years of supervised probation.

The fact that the instant federal offense occurred while he was still serving concurrent probationary terms for both the burglary and unauthorized removal convictions shows that prior convictions, suspended sentences, and the ongoing oversight of probation officers have not deterred him from engaging in new, more dangerous criminal conduct.

Padilla Sanchez has a demonstrated history of noncompliance with court ordered supervision. Following his felony convictions, he was placed on concurrent terms of supervised probation in Maryland. Those sentences were intended to provide him with an opportunity to demonstrate that he could comply with the law and rebuild his life under structured oversight. Instead. Instead, he treated the conditions of probation as optional.

According to Maryland Parole and Probation records and the Pretrial Services Agency, Padilla Sanchez stopped reporting to his supervising agent altogether in July 2024 and remained out of contact for more than a year. He ignored repeated directives to provide proof of lawful employment or school enrollment. He compounded these violations by failing to notify his probation officer of new arrests, including a March 2025 arrest for possession of drug

paraphernalia and a May 2025 arrest for disorderly conduct. In the latter case, he failed to appear for his scheduled court date on June 24, 2025, which resulted in the issuance of a bench warrant.

At the time of his arrest in this federal case, Padilla Sanchez was therefore a fugitive from Maryland supervision, with multiple open warrants and a documented history of ignoring court dates and probation obligations. His conduct demonstrates that he is unwilling to comply with even the most basic conditions of release, and that court orders, whether to report, to appear, or to obey the law, carry no deterrent effect for him.

The Pretrial Services Report records show the Defendant tested positive for fentanyl within 30 days of his arrest, and he admitted to officers on September 12 that he had ingested fentanyl earlier that day. His possession of 44 fentanyl pills while armed only exacerbates the concern and points to the likely root cause of his continued criminal conduct and non-compliance issues.

While the Defendant has resided in the area for approximately 15 years and lives with his mother in Silver Spring, Maryland, these ties have not deterred his criminal conduct. He is unemployed and has not maintained verifiable lawful employment or education during supervision.

The Defendant is legally present in the United States but not a U.S. citizen. His status increases the risk of flight since he has ties outside the United States, faces significant penalties in this case, and has a documented history of failing to appear and absconding from supervision. These factors, taken together, heighten the likelihood that he would not remain in the jurisdiction if released.

D. **The Nature and Seriousness of the Danger Posed by Release**

The Defendant's release would pose an immediate and substantial danger to the community. The weapon Padilla Sanchez was carrying was ready to fire, with one round in the chamber and nine more in the magazine. It was on his person, in a crowded public space, where any confrontation could have resulted in immediate and lethal violence. Courts in this District have repeatedly recognized that unlawful possession of a loaded firearm by a convicted felon presents an acute public safety threat, even absent evidence of brandishing or discharge. *See United States v. Cole,* No. 20-cr-44 (TNM), 2020 WL 2308696, at *3 (D.D.C. May 8, 2020) (noting that a loaded firearm "has the great potential to escalate into violence," particularly when defendant's prior convictions indicate a predilection for violence); *United States v. Riggins,* No. 20-cr-10 (CKK), 2020 WL 1984263, at *4 (D.D.C. Apr. 27, 2020) ("[T]he possession of a firearm, especially while seemingly on a drug such as PCP, presents a serious danger to the community.") *United States v. Washington*, 907 F. Supp. 476, 486 (D.D.C. 1995) ("[P]ossession by a felon of a fully loaded semi-automatic pistol suggests that the defendant presents an extreme safety risk to the public.").

Moreover, the Defendant's possession of this firearm necessarily demonstrates that he has both the ability and the willingness to obtain weapons through unlawful means. As a convicted felon, federal law prohibits him from purchasing or possessing a firearm, and no federally licensed firearms dealer could have sold him one after conducting the required background check. Unless he acquired the firearm prior to becoming a felon, his acquisition of a loaded, operable handgun shows that he has access to an illicit sources of firearms, whether through

10

black-market purchases, straw purchasers or theft.

In short, Padilla Sanchez's release would place the community at unacceptable risk. His conduct shows not only a willingness to arm himself illegally, but to do so while engaged in conduct that endangers both public safety and public health. No condition or combination of conditions can reasonably mitigate that danger.

**VII.    Conclusion**

The Defendant's release would pose an immediate and unacceptable threat to public safety. He was arrested in a crowded Metro station with a loaded, chambered 9mm handgun and 44 counterfeit "M30" fentanyl pills, a well-known lethal combination that endangers both lives and community stability. As a convicted felon, he could not have lawfully obtained the firearm, demonstrating his ability and willingness to arm himself through illicit means.

This conduct occurred while he was on concurrent felony probation, in active warrant status for multiple violations, and after a sustained pattern of ignoring court orders. Prior convictions, suspended sentences, and supervision have not deterred him, and his history shows he will not comply with release conditions.

He also presents a serious risk of flight. He is the subject of multiple active warrants, reflecting a consistent disregard for court obligations. Even under active supervision, he has failed to appear and remained out of contact with authorities for extended periods.

Given his record, the strength of the evidence, and the nature of the current charges, no condition or combination of conditions can reasonably assure community safety or his appearance in court. Detention pending trial is warranted.

WHEREFORE, this Court should detain the Defendant pending trial.

                Respectfully submitted,

                JEANINE FERRIS PIRRO
                United States Attorney

By: */s/ Christopher Tortorice*
     Christopher Tortorice
     Assistant United States Attorney
     TX Bar Number 24048912
     National Security Section
     601 D Street, N.W., 5th Floor
     Washington, D.C. 20530
     Office: (202) 252-7155
     Christopher.tortorice@usdoj.gov